[Cite as *Cain v. McKee Door Sales*, 2013-Ohio-4217.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Betty R. Cain et al., :

     Plaintiffs-Appellants, :

v. : No. 13AP-352
(C.P.C. No. 12CV-02-1655)

McKee Door Sales et al., :

     Defendants-Appellees. : (REGULAR CALENDAR)

---

D E C I S I O N

Rendered on September 26, 2013

---

*Arthur C. Graves*, for appellants.

*Joyce V. Kimbler*, for appellees.

---

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Betty R. Cain is appealing from the summary judgment entered in her lawsuit. She assigns a single error for our consideration:

> The trial court erred in sustaining the Motion for Summary Judgment filed on behalf of the Defendants.

{¶ 2} Betty Cain fell on snow and ice in the parking lot at the office of her eye doctor. She was seriously injured. As a result, she sued various entities affiliated with the office building. Summary judgment was granted in her lawsuit.

{¶ 3} Lawsuits on behalf of persons who fall on ice or snow are rarely successful in Ohio. The Supreme Court of Ohio has made liability very hard to establish. In *Brinkman v. Ross*, 68 Ohio St.3d 82 (1993), the Supreme Court held in the syllabus:

> Homeowner has no common-law duty to remove or make less hazardous natural accumulation of ice and snow on private sidewalks or walkways on homeowner's premises, or to warn those who enter upon premises of inherent dangers presented by natural accumulations of ice and snow, regardless of whether entrant is social guest or business invitee.

{¶ 4} The facts in the *Brinkman* case are that the Brinkmans were invited to visit the Ross home during the winter. The Ross family knew that the sidewalk into the house was covered by a sheet of ice which in turn was covered by a dusting of snow. The Rosses knew the situation was dangerous, but never warned their friends, the Brinkmans. The Rosses discussed salting their sidewalk or otherwise alleviating the danger, but did not do so before the Brinkmans arrived. A fall occurred and serious injury ensued.

{¶ 5} This appellate court found that liability was possible under these facts. The Supreme Court reversed our findings and published its opinion which included the syllabus set forth above.

{¶ 6} Counsel for Betty Cain tries to distinguish the case of *Brinkman*, arguing that the construction of the parking lot was improper or improperly designed, resulting in a trough in the parking lot which accumulated snow, ice and water in what constituted an unnatural accumulation. Counsel in essence asks us to disregard *Brinkman* on other issues, such as failure to warn of the dangers and failure to remove the danger through salting or plowing. In many ways, the facts in *Brinkman* were more egregious than those presented here. The Rosses were aware of the danger. There is no showing that any defendant here knew of the danger. The Rosses discussed the need to alleviate the problem and had time to do so. In Betty Cain's situation, the snow built up because the storm continued while Betty Cain was in her doctor's office.

{¶ 7} We see nothing in the *Brinkman* case which implies a different standard for office premises as opposed to hours used for business purposes, so the only issue which is left open by *Brinkman* is the issue of whether the snow, ice and water where she fell were not a natural accumulation. Counsel for Betty Cain submits that she slipped on "snow covered ice formed by storm water runoff from a defectively designed parking lot that created an unnatural accumulation of snow and ice." Appellant's brief, at 7.

{¶ 8} Nothing in the record before us indicates that the snow in the parking lot was removed or moved, so the accumulation of snow at least was a natural accumulation.

{¶ 9} Betty Cain could not say that ice was present when she arrived at the office building. If the ice was there, she did not claim to notice it. Betty's affidavit in resisting summary judgment states:

> As I approached my car from the rear, I was reaching for my door and I slipped and fell on the snow and ice that had accumulated in the drainage swale of the parking lot * * *.

{¶ 10} Betty Cain left her car to go into her doctor's office by walking in front of her car. However, she obviously had to step into the very area where she fell when she was exiting her car initially, given her statement that she was close enough to be reaching for her car door when she fell. Further, as noted earlier, snow does not automatically move once it has fallen. Clearly, snow could drift and accumulate in a low place in the parking lot. This is not direct evidence of wind conditions or drifting other than the conclusory statement that the snow and ice had accumulated in the swale of the parking lot.

{¶ 11} Her affidavit does not demonstrate that the accumulation of snow and ice was an unnatural accumulation just because it was in a swale. In theory, the ice in the *Brinkman* case was an unnatural accumulation because the sidewalks do not occur in nature. Snow and ice was not found to be an unnatural accumulation for liability purposes in *Brinkman*.

{¶ 12} The difference from the *Brinkman* case is that this case includes expert testimony and information. In resisting the motion for summary judgment, Betty Cain's counsel provided a report from Robson Forensic. The report was authored by Lee E. Martin, who is an architect, safety expert and certified building official. The report provides a detailed review of the parking lot and of weather conditions during the week when Betty Cain fell. The report notes that she fell on ice at about 1:00 p.m. on February 10. During the week of the fall, the temperature barred between 1 and 37° Fahrenheit. Under these conditions, melted precipitation would have flowed to the swale and then froze again. The ice on which she fell, construing the facts strongly in her favor, as required in addressing the motion for summary judgment, leaves a genuine issue of material fact as to whether or not she fell on an unnatural accumulation of ice which resulted from the design of the parking lot.

{¶ 13} Nothing in the record to this point included that she knew ice was present when she got out of her car or when she reached for the car door when she returned to her

car. The mere fact it had snowed recently did not make the danger from the ice open and obvious, such that no duty of care was present. Stated differently, the open and obvious doctrine commonly argued in slip and fall cases does not automatically apply at this stage of the proceedings.

{¶ 14} As a result, we sustain the sole assignment of error. We reverse the summary judgment granted by the trial court and remand the case for further appropriate proceedings.

{¶ 15} The sole assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed and the case remanded for further proceedings.

*Judgment reversed and remanded
for further proceedings.*

CONNOR, J., concurs.
DORRIAN, J., dissents.

DORRIAN, J., dissenting.

{¶ 16} Appellant Betty Cain argues that the ice and snow upon which she fell was an unnatural accumulation due to the swale. Yet, she was aware of rain (possibly freezing), and snow which had been falling throughout the parking lot and on the sidewalk while she was in the doctor's office. Upon leaving the doctor's office, the snowy and icy conditions caused her to take her time walking back to her car "because it looked slick to [her], [b]ecause there was ice on the sidewalk as [she] came out the door." (Cain depo., 23, 25, 26, 30, 31); (*see also* Architect Lee Martin's Report, at 2, attached as exhibit No. 2 to Plaintiff's Memorandum Contra Defendant's Motion for Summary Judgment). Furthermore, no evidence was presented that the snow and ice at the exact location where she fell was substantially more dangerous than the snow and ice of which she was aware and had anticipated in the parking lot and on the sidewalk. Taking this into consideration and given the precedent of the Supreme Court of Ohio and this court, I would affirm the granting of summary judgment.

_____